**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

| | |
|---|---|
| JERMAINE PERKINSON, | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-19 |
| v. | |
| MARTY ALLEN; TREVONZA BOBBITT; HEATHER FLOWERS; KAYLA LANIER; JACKSON; and CALLAHAN, | |
| Defendants. | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff filed this action, asserting claims under 42 U.S.C. § 1983. Doc. 4.[1] This matter is now before the Court for a frivolity screening under 28 U.S.C. § 1915A. For the reasons stated below, I **RECOMMEND** the Court **DISMISS** the following portions of Plaintiff's Complaint:

1. Monetary damages claims against Defendants in their official capacities;

2. Deliberate indifference claim against Defendant Allen based on prison attacks;

3. Deliberate indifference claim against Defendants Lanier, Flowers, and Jackson for using disciplinary actions when Plaintiff refused housing assignment;

4. Deliberate indifference claims against Defendants Jackson, Allen, and Bobbitt arising from housing placement near prior assailants; and

5. Retaliation claim based on housing placement near prior assailant.

---

[1] Plaintiff initially filed a Complaint on March 26, 2019. Doc. 1. On March 27, 2019, Plaintiff filed an amended version of his Complaint. Doc. 4. "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Can., 674 F.2d 1365, 1370 n.6 (11th Cir. 1982). Accordingly, this Court, in conducting its review under § 1915A, will only consider the allegations of Plaintiff's Amended Complaint. See Schreane v. Middlebrooks, 522 F. App'x 845, 847 (11th Cir. 2013) ("The district court did not err in considering [pro se prisoner's] Amended Complaint to supersede his Initial Complaint.").

However, I **FIND** one of Plaintiff's claims may proceed. Specifically, the Court directs service, by separate Order, of Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendants Callahan, Flowers, and Lanier.

## PLAINTIFF'S CLAIMS

In Plaintiff's § 1983 action, he outlines three separate occasions where other inmates attacked him while he was incarcerated at Georgia State Prison. Doc. 4 at 3. In addition to claiming Defendants Callahan, Flowers, and Lanier were deliberately indifferent to his medical needs following one of the attacks in which Plaintiff sustained a lip injury that ultimately required surgery, id. at 3–5, 7, Plaintiff complains that Defendant Allen was deliberately indifferent and contributed to the two later attacks when he failed to move Plaintiff to another dorm. Id. at 7. He further alleges a deliberate indifference claim against Defendants Lanier, Flowers, and Jackson for trying to move him to a dorm where he felt unsafe, and when he refused, subjecting him to disciplinary actions. Id. Finally, Plaintiff alleges Defendants Allen, Bobbitt, and Jackson were deliberately indifferent and acted in retaliation when they housed Plaintiff's prior assailants near him. Id. Plaintiff has sued all six Defendants in their individual and official capacities. Id. at 2.

## STANDARD OF REVIEW

A federal court is required to conduct an initial screening of all prisoner complaints. 28 U.S.C. § 1915A(b). During the initial screening, the court must identify any cognizable claims in the complaint. Id. Additionally, the court must dismiss the complaint (or any portion of the complaint) that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.[2] Id. In its

---

[2] Similarly, the Court must also conduct an initial screening of any action in which the plaintiff is proceeding *in forma pauperis*. 28 U.S.C. § 1915(a).

analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993).

A claim is frivolous under § 1915(e)(2)(B)(i) if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)). In order to state a claim upon which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To state a claim, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. At this stage, the Court accepts as true a plaintiff's factual allegations. Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

## DISCUSSION

### I. Plaintiff's Monetary Damages Claims Against Defendants in Their Official Capacities

Plaintiff cannot sustain a § 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits based on the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71.

Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. The Court should **DISMISS** these claims.

**II. Plaintiff's Deliberate Indifference Claim Against Defendant Allen Based on Prison Attacks**

Plaintiff alleges Defendant Allen showed deliberate indifference to his safety by ignoring Plaintiff's written and verbal requests to be moved to another dorm. Doc. 4 at 7. Plaintiff claims this deliberate indifference resulted in him being attacked more than once, causing permanent injuries. Id. In his Amended Complaint, Plaintiff states he was initially attacked by his roommate, Miguel, in March 2017. Id. at 3; Doc. 4-1 at 2. After that incident, Plaintiff was moved to building F1, where he sometimes shared a small yard with Miguel. Doc. 4 at 3. Around this time, Plaintiff wrote a letter to Defendant Allen requesting to be moved out of F1 due to concerns with his safety. Id. Then, on April 10, 2017, Plaintiff was attacked by his bunkmate, Levi Maddox. Id. Plaintiff was again attacked on April 26, 2017 by another inmate, Andrew Stone. Id.

With regard to inmate-on-inmate violence, "[a] prison official's failure to prevent inmate-on-inmate violence may constitute deliberate indifference, if the prison official knew there was a substantial risk of serious harm and then knowingly or recklessly disregarded that risk." Averhart v. Warden, 590 F. App'x 873, 875 (11th Cir. 2014). Prison officials, however, are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega,

908 F.2d 1561, 1564 (11th Cir. 1990). "An excessive risk of inmate-on-inmate violence creates a substantial risk of serious harm, but occasional, isolated attacks by one prisoner on another may not constitute an Eighth Amendment violation." Oliver v. Harden, 587 F. App'x 618, 620 (11th Cir. 2014).

To prevail on his Eighth Amendment claim against Defendant Allen, Plaintiff must show: "(1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) a causal connection between the defendant['s] conduct and the Eighth Amendment violation." Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015). "The first element, a substantial risk of serious harm, is evaluated using an objective standard. There must be a strong likelihood of injury, rather than a mere possibility, before an official's failure to act can constitute deliberate indifference." Id. (citations and quotation marks omitted).

In order to show the second element, the defendant's deliberate indifference, there must be: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). In particular, "plaintiff must show that the defendants were aware of specific facts from which it could be inferred that a substantial risk of serious harm existed and that the defendants actually drew that inference." Oliver, 587 F. App'x at 620. "But before Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (general knowledge of problematic nature of cellmate who attacked plaintiff was insufficient to give defendants level of knowledge required for deliberate indifference); see also McBride v. Rivers, 170 F. App'x 648, 655 (11th Cir. 2006) (no deliberate indifference on part of defendants

even though plaintiff, prior to being assaulted by inmate, told defendants not to put him in cell with inmate and that he feared for his life).

In this case, Plaintiff portrays each attack as isolated and distinct from the other attacks. Doc. 4 at 3. Plaintiff fails to allege Defendant Allen had notice that any of the alleged assailants would harm Plaintiff prior to the actual attacks. As a result, Plaintiff's allegations in his Amended Complaint do not show Defendant Allen had the requisite subjective knowledge of a substantial risk of serious harm, and, thus, Plaintiff fails to state a claim for deliberate indifference against Defendant Allen based on any of the three attacks. Accordingly, the Court should **DISMISS** Plaintiff's claim that Defendant Allen was deliberately indifferent for failing to protect Plaintiff from being attacked.

### III. Plaintiff's Deliberate Indifference Claim Against Defendants Lanier, Flowers, and Jackson for Using Disciplinary Actions when Plaintiff Refused Housing Assignment

Plaintiff complains that from May 15 to June 2, 2017, he was given the option of being subjected to disciplinary actions or returning to the F1 building, where he had previously been attacked by two different inmates, doc. 4 at 3, and where he had been told there was a contract on his head. Id. at 5–6. He alleges this constituted deliberate indifference. Id. at 7. The Court, however, finds that Defendants' actions in allowing Plaintiff to remain in segregation on Tier I, because of his claims that he feared for his life in the F1 building, do not constitute cruel and unusual punishment. "[A]dministrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987).

Moreover, Defendants' actions in subjecting Plaintiff to disciplinary actions, which appear to have resulted in a temporary denial of visitation and phone access, doc. 4-1 at 9, also do not amount to Eighth Amendment violations. See Moulds v. Bullard, 345 F. App'x 387, 396

6

(11th Cir. 2009) ("Temporary withdrawal of visitation privileges for disciplinary purposes is 'not a dramatic departure from accepted standards for conditions of confinement . . . .'" (citing Overton v. Bazzetta, 539 U.S. 126, 137 (2003))); Roberts v. Pichardo, No. 11-13378-C, 2012 WL 12109911, at *2 (11th Cir. June 1, 2012) (disciplinary confinement that included loss of television, radio, telephone privileges, and visitation privileges for three years after alleged misconduct, which Plaintiff disputed, did not violate Eighth Amendment).

Here, Plaintiff was ultimately allowed to stay in Tier I housing, rather than being returned to the F1 dorm where he feared for his safety, and, on June 3, 2017, he was moved to the B3 dorm. Doc. 4 at 6. Moreover, as outlined above, his allegations that he was subjected to disciplinary actions, consisting of the denial of phone and visitation privileges, do not shock the conscience or otherwise trigger the cruel and unusual punishments provision of the Eighth Amendment. Rather, "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's deliberate indifference claims against Lanier, Jackson, and Flowers based on the allegation that they subjected Plaintiff to disciplinary actions when he refused to return to the F1 dorm.

**IV.     Plaintiff's Deliberate Indifference Claims Against Defendants Jackson, Allen, and Bobbitt Arising from Placement near Prior Assailants**

Plaintiff alleges Defendant Jackson was deliberately indifferent by placing Plaintiff in a dorm that allowed access by an inmate who previously attacked him. Doc. 4 at 7. The Court assumes Plaintiff is referring to the fact that he and inmate Miguel were housed near each other in March 2017. See id. at 3. Plaintiff also alleges Defendants Allen, Bobbitt, and Jackson were deliberately indifferent when they placed the inmate who robbed and attacked Plaintiff in the

same dorm as Plaintiff. Id. at 7. The Court assumes this claim is based on the placement of inmate Stone in Plaintiff's dorm in November 2017. See id. at 6.

In both instances, these particular inmates did not commit any additional attacks on Plaintiff. Moreover, Plaintiff has since moved to another prison.[3] Plaintiff is, at most, complaining about the conditions of his confinement while he was housed at Georgia State Prison, specifically that he had to endure being housed near his prior assailants. "An allegation that prison officials exposed a prisoner to a 'risk of violence at the hands of other inmates,' does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause." Doe v. Welborn, 110 F.3d 520, 524 (7th Cir. 1997) (citing Babcock v. White, 102 F.3d 267, 273 (7th Cir. 1996)). "[I]t is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." Babcock, 102 F.3d at 272; see also Wood v. Thomas, Case No. 7:16-cv-01306, 2017 WL 758952, at *3 (N.D. Ala. Jan. 13, 2017) (no Eighth Amendment claim where plaintiff housed near "known enemies" but never assaulted by them).

The Court finds Plaintiff's allegations of being housed near his prior assailants do not rise to the level of Eighth Amendment violations.[4] "[E]xtreme deprivations are required to make out

---

[3] Plaintiff does not specifically request injunctive relief in connection with his claims against Defendants. However, the Court notes his transfer from Georgia State Prison to Riverbend Correctional Facility, see doc. 1 at 3, forecloses Plaintiff from pursuing injunctive relief against these Defendants. See Robbins v. Robertson, 782 F. App'x 794, 799 (11th Cir. 2019) ("'The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief' . . . ." (quoting McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984))).

[4] Even if Plaintiff's allegations reached the level of an Eighth Amendment violation, his inability to show a physical injury stemming from these Defendants' actions would bar his claims for compensatory and punitive damages. See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."); see also Al-Amin v. Smith, 637 F.3d 1192, 1198–99 (11th Cir. 2011) (holding that in absence of physical injury, recovery of compensatory and punitive damages by prisoner is barred under 42 U.S.C. § 1997e(e)).

a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). In this case, there is no indication that being housed near his prior assailants constituted the extreme conditions necessary for Plaintiff to bring an Eighth Amendment claim. Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's Eighth Amendment claims against Defendants Allen, Bobbitt, and Jackson based on Plaintiff's placement in a dorm near his prior assailants.

**V.        Plaintiff's Retaliation Claim Based on Housing Placement near Prior Assailant**

Plaintiff also alleges that Defendants Allen, Bobbitt, and Jackson showed signs of retaliation when they moved Plaintiff's prior assailant into his dorm. Doc. 4 at 7.

To prevail on a retaliation claim, Plaintiff must establish that: (1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]. O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation and quotation marks omitted). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). However, "[t]o establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008).

Here, Plaintiff is claiming Defendants' decision to move Stone, the prior assailant, into his dorm in November 2017 was retaliation for Plaintiff's earlier attempts to speak up and take action against the administration. Doc. 4 at 7. Plaintiff's conclusory allegation that certain

9

conduct was retaliatory, without more, is insufficient to state a valid claim. The pleadings show that Stone was moved into Plaintiff's dorm many months after Plaintiff complained to officials about his safety concerns. Doc. 4 at 6. The lapse in time between Plaintiff's complaints and the alleged retaliatory conduct and the failure to present any causal connection between the two events lead this Court to find Plaintiff fails to state a claim of retaliation. See Leonard v. Monroe County, 789 F. App'x 848, 850–51(11th Cir. 2019) (dismissal under § 1915 affirmed where prisoner "made only a conclusory assertion that he was placed in administrative confinement in retaliation for filing grievances."). Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's claim of retaliation based on the placement of inmate Stone in his dorm.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** Plaintiff's monetary damages claims against Defendants in their official capacities, his deliberate indifference claim against Defendant Allen based on prison attacks, his deliberate indifference claim against Defendants Lanier, Flowers, and Jackson for using disciplinary actions when Plaintiff refused his housing assignment, and his deliberate indifference and retaliation claims against Defendants Jackson, Allen, and Bobbitt arising from his housing placement near prior assailants.

Any party seeking to object to this Report and Recommendation shall file specific written objections within 14 days of the date on which this Report and Recommendation is entered. See 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy

of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; see Symonette v. V.A. Leasing Corp., 648 F. App'x 787, 790 (11th Cir. 2016); Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015).

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of February, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA